**CIVIL MINUTES – GENERAL**    **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|----------|--------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|-----------------|-------------|-----|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                          Not Present

**Proceedings:**    (IN CHAMBERS) - DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (Dkt. [ 26 ], filed October 23, 2019)

## I.    INTRODUCTION

On July 25, 2019, plaintiffs filed this action against defendant Transamerica Life Insurance Company ("Transamerica"). Dkt. 1. Plaintiffs allege that Transamerica wrongfully increased the monthly deduction rates ("MDRs") of certain universal life insurance policies. Id.

Plaintiffs filed the operative first amended complaint on October 2, 2019. Dkt. 26 ("FAC"). The FAC asserts claims for: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing; (4) conversion; and (5) declaratory relief. See generally id.

Transamerica filed a motion to dismiss the FAC on October 23, 2019. Dkt. 29-1 ("Mot."). Plaintiffs filed an opposition on November 27, 2019. Dkt. 31 ("Opp."). Transamerica filed a reply on December 20, 2019. Dkt. 32 ("Reply").

The Court held a hearing on January 23, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

### A.    The Parties

#### 1.    The FCI Entities

Plaintiff Financial Credit Investment II Trust A ("FCI II Trust A") is a Delaware statutory trust that maintains its principal place of business in Minnesota. FAC ¶ 38.

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Plaintiff Financial Credit Investment II Trust C ("FCI II Trust C") is a Delaware statutory trust that maintains its principal place of business in Minnesota. FAC ¶ 39. Plaintiff Financial Credit Investment II Trust D ("FCI II Trust D") is a Delaware statutory trust that maintains its principal place of business in Minnesota. Id. ¶ 40. Plaintiff Financial Credit Investment II WT ("FCI II Trust WT") is a Delaware statutory trust that maintains its principal place of business in Michigan. Id. ¶ 41. Plaintiff Financial Credit Investment II Limited ("FCI II Ltd.") is a private limited liability company, incorporated under the laws of Ireland, that maintains its principal place of business in Ireland. Id. ¶ 42. Plaintiff Financial Credit Investment III Trust A ("FCI III Trust A") is a Delaware statutory trust that maintains its principal place of business in Minnesota. Id. ¶ 43. Plaintiff Financial Credit Investment III Trust B ("FCI III Trust B") is a Delaware statutory trust that maintains its principal place of business in Minnesota. Id. ¶ 44. Plaintiff Financial Credit Investment III SPV-A (Cayman), L.P. ("FCI III SPV-A") is a Cayman Islands exempted limited partnership that maintains its principal place of business in Ireland. Id. ¶ 45. Plaintiff Financial Credit Investment III SPV-B (Cayman), L.P. ("FCI III SPV-B") is a Cayman Islands exempted limited partnership that maintains its principal place of business in Ireland.

FCI II Trust A, FCI II Trust C , FCI II Trust D, FCI II Trust WT, FCI II Ltd., FCI III Trust A, FCI III Trust B, FCI III SPV-A, and FCI III SPV-B (together, "the FCI Entities") are the ultimate owners and beneficiaries of 86 universal life insurance policies issued by Transamerica. FAC ¶ 49. 57 of these policies were issued in California. Id. The policies' death benefits range in value from $250,000.00 to $15,000,000.00. Id.

### 2. The Securities Intermediaries

Plaintiff Wells Fargo Bank, National Association ("Wells Fargo Bank") is a national banking association that maintains its principal place of business in South Dakota. FAC ¶ 35. Wells Fargo Acts as the securities intermediary for FCI II Trust D, FCI III Trust A, and FCI III SPV-A. Id.

Plaintiff U.S. Bank National Association ("U.S. Bank") is a national banking association that maintains its principal place of business in Minnesota. FAC ¶ 34. U.S. Bank acts as the securities intermediary for FCI Trust A, FCI II Trust C, FCI III Trust B, and FCI III SPV-B. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Plaintiff Wilmington Savings Fund Society, FSB ("WSFS") is a federal savings bank that maintains its principal place of business in Delaware. FAC ¶ 36. WSFS acts as securities intermediary for FCI II Ltd. Id.

Wilmington Trust, National Association ("Wilmington Trust") is a national banking association that maintains its principal place of business in Delaware. FAC ¶ 37. It acts as the securities intermediary for FCI III SPV-A. Id.

### 3. Transamerica

Transamerica is an Iowa corporation with its principal place of business in Iowa. FAC ¶ 48. Plaintiffs allege that Transamerica is authorized to do (and does substantial) business in California. Id.

### B. Transamerica's MDR Increases

At issue in this case are Transamerica's universal life insurance policies, which contain two components: (1) a "mortality" component, for which Transamerica charges a cost to cover the risk of the insured's death ( "the cost of insurance"); and (b) a "cash value" component, where premiums paid in excess of the cost of insurance and other charges accumulate ("the Accumulation Value") and earn interest. FAC ¶ 8. No fixed premiums are due under Transamerica's universal life insurance policies—instead, Transamerica deducts funds from the accounts (the MDRs) to cover the cost of insurance and other charges. Id. ¶ 12. If a particular universal life insurance policy's balance is insufficient to cover these monthly charges, the policy will enter a grace period and lapse unless additional premiums are paid. Id.

Transamerica's universal life insurance policies include both guaranteed and non-guaranteed elements. FAC ¶ 13. Guaranteed elements—including the guaranteed minimum interest rate on which interest on the Accumulation Values accrue—are fixed and determined at a specific time, such as when a given policy is issued. Id. Transamerica, however, may adjust non-guaranteed elements, such as the MDRs, consistent with the universal life insurance policy's terms. Id.

Plaintiffs' policies state either that Transamerica "will determine the [MDRs] for each policy month at the beginning of that policy month," or that Transamerica "will determine the [MDRs] for each policy year at the beginning of that year." FAC ¶ 63. Plaintiffs allege that at least some of their policies provide that "[a]ny change in the [MDRs] will be prospective and will be subject to our expectations as to future cost factors.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Such cost factors may include, but are not limited to: mortality; expenses; interest; persistency; and any applicable federal, state and local taxes." Id. Plaintiffs further allege that their policies state that Transamerica "does not distribute past surplus or recover past losses by changing the [MDRs]." FAC ¶ 64. Plaintiffs therefore allege that the policies' terms limit Transamerica's ability to raise the MDRs in two critical ways, any change in the MDRS: "(a) can only be based on Transamerica's expectations as to future cost factors; and (b) must be prospective only: Transamerica cannot change [the MDRs] to recover past losses (or distribute past surplus)." Id. ¶ 65.

Plaintiffs allege that Transamerica began raising the MDRs in June 2015 in a manner that violated the policies' terms. FAC ¶ 66. According to plaintiffs, "[b]y raising the [MDRs] on the [p]olicies, in some cases by as much as 93%, without a proper basis, and by continuing to bill, collect and retain the unlawful increase of the [MDRs], Transamerica has breached and continues to breach the express and implied terms of the [p]olicies." Id. ¶ 4. Plaintiffs further contend that the purpose of these increases is "to force [p]laintiffs and other policyholders either to (a) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (b) lapse or surrender their policies and thus forfeit the premiums they have paid to date and the earnings thereon[.]" Id. ¶ 26.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006)). The plaintiff cannot simply rely on the "bare allegations" of its complaint; however, uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Generally, personal jurisdiction exists if: (1) it is permitted by the forum state's long-arm statute; and (2) the "exercise of that jurisdiction does not violate federal due process."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

<u>Pebble Beach</u>, 453 F.3d at 1154–55. "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." <u>Boschetto</u>, 539 F.3d at 1015. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" <u>Schwarzenegger</u>, 374 F.3d at 801 (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

### 1. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (quoting <u>International Shoe</u>, 326 U.S. at 317). A corporation's place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014). Otherwise, "[t]he standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" <u>King v. Am. Family Mut. Ins. Co.</u>, 632 F.3d 570, 579 (9th Cir. 2011) (quoting <u>International Shoe</u>, 326 U.S. at 318). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1224 (9th Cir. 2011).

### 2. Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. <u>Rano v. Sipa Press, Inc.</u>, 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

(2) The claim must arise out of or result from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established. Schwarzenegger, 374 F.3d at 802.

In contracts cases, courts conduct a "purposeful availment" analysis to determine the first prong of the specific jurisdiction test. Id. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether purposeful availment has occurred: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. Burger King, 471 U.S. at 478–79. A single contract for the sale of goods to a plaintiff in the forum state may be sufficient for specific jurisdiction over a defendant, but only where the contract creates a "substantial connection" with the forum state. Boschetto, 539 F.3d at 1017. "The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction," without more. Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).

If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth v. Garcia Marquez, 942 F.2d 617, 623 (9th Cir. 1991).

**B.     Rule 12(b)(6)**

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY |

court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

### A.   Personal Jurisdiction

Transamerica first moves to dismiss plaintiffs' claims on the grounds that the Court cannot exercise personal jurisdiction over Transamerica. Mot. at 8. Transamerica contends that the Court may not exercise general jurisdiction over it because Transamerica is incorporated in Iowa and maintains its principal place of business in Iowa. Id. at 9. Transamerica further asserts that the Court may not exercise specific personal jurisdiction over it because, according to Transamerica, "[p]laintiffs allege no substantial connection between the conduct that allegedly harmed them . . . and California." Id. at 10.

#### 1.   Purposeful Availment

The first prong of the specific jurisdiction analysis requires that a non-resident defendant "purposefully avail [itself] of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws[.]" In re W. States Wholesale Nat. Gas Antitrust Litig., 715 F.3d 716, 741–42 (9th Cir. 2013) (internal citation omitted). For a case sounding in contract, "[a] showing that a defendant purposefully availed [itself] . . . typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802. "For tort-based claims, the Ninth Circuit has stated that a court may exercise personal jurisdiction over a defendant whose only contact with the forum state is the purposeful direction of a foreign act having effect in the forum state." Healthcare Ally Mgmt. of California, LLC v. Med. Mut. of Ohio, No. 2:14-cv-09428-SJO-JEM, 2015 WL 12746216, at *5 (C.D. Cal. Jan. 26, 2015).

Plaintiffs offer evidence demonstrating that, notwithstanding Transamerica's Iowa citizenship, Transamerica has purposely availed itself of the privileges of this forum. For example, plaintiffs allege that: Transamerica has registered with the California Secretary of State's Office; Transamerica is licensed with the California Department of Insurance; Transamerica signed each of the 86 policies at issue in this case in Los Angeles, California; 18 of the policies list Transamerica's "home office" as being in Los Angeles, California; and 68 of the policies list Transamerica's "marketing office" as being in Los Angeles,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

California. FAC ¶¶ 2–3; Opp. at 12–13; Dkt. 31-1, Declaration of Khai LeQuang ("LeQuang Decl.") ¶¶ 2–6. In at least three other cases challenging Transamerica's allegedly impermissible MDR increases, the Court has found similar factors sufficient to conclude that Transamerica has purposely availed itself of the privileges of doing business in California. See Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 6315541, at *7 (C.D. Cal. Aug. 28, 2019); Hamra v. Transamerica Life Ins. Co., No. 2:18-cv-06262-CAS-GJS, 2019 WL 468803, at *5 (C.D. Cal. Feb. 6, 2019); Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, 2017 WL 6453262, at *5 (C.D. Cal. Dec. 11, 2017).

Accordingly, the Court finds that plaintiffs have made an adequate showing under the purposeful availment prong sufficient to support the Court's exercise of specific personal jurisdiction over Transamerica.

### 2.    Forum-Related Activities

The second prong of the specific personal jurisdiction analysis requires that plaintiffs' claims arise out of, or relate to, Transamerica's forum-related activities. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (internal citation omitted). The Ninth Circuit applies a "but for" test to determine whether claims relate to forum-related activities. Monster Energy Co. v. Vital Pharm., Inc., No. 5:18-cv-01882-JGB-SHK, 2019 WL 2619666, at *7 (C.D. Cal. May 20, 2019) (citing Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995)). Under this test, the question is: but for Transamerica's conduct in California, would plaintiffs' claims have arisen? As the Court has previously observed, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." Feller, 2017 WL 6453262, at *6 (citing Dubose v. Bristol-Myers Squibb Co., No. 17-cv-00244-JST, 2017 WL 2775034, at *3 (N.D. Cal. June 27, 2017)).

Transamerica contends that plaintiffs cannot make the required showing of a nexus between plaintiffs' claims and Transamerica's California contacts. Mot. at 10. That is because, according to Transamerica, "[p]laintiffs' reliance on conduct at or before the [p]olicies were issued and on this Court's decisions in prior cases against [Transamerica] is misplaced because [p]laintiffs' claims are pleaded differently." Reply at 5. Transamerica's argument on this basis is unavailing.

Here, plaintiffs have presented a causal chain sufficient to establish a nexus between their claims and Transamerica's California contacts. According to plaintiffs, "the policies

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|----------|--------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

were developed, priced and marketed in Los Angeles; Transamerica signed and issued the policies from its Los Angeles office; several of the policies identify Los Angeles as Transamerica's 'Home Office' or 'Marketing Office'; Transamerica issued illustrations from its Los Angeles office; and key Transamerica employees behind the MDR increases operated out of Los Angeles." Opp. at 13.

These allegations are sufficient to establish, at this juncture, that but-for Transamerica's conduct in California, including signing *each of the 86 policies* at issue in this case and the work of Transamerica's Los Angeles employees, plaintiffs' claims would not have arisen. See LSH CO v. Transamerica Life Ins. Co., No. 2:18-cv-09711-SJO-KS, 2019 WL 3064422, at *6 (C.D. Cal. Mar. 20, 2019) (finding sufficient nexus between plaintiffs' claims related to MDR increases and Transamerica's contacts with California where fifteen of twenty-two policies identified Los Angeles as Transamerica's home office and remaining seven identified Los Angeles as Transamerica's marketing office); Feller, 2017 WL 6453262, at *6 (finding sufficient nexus based, in part, on similar allegations regarding involvement of former Los Angeles-based employees in Transamerica's MDR increases). Accordingly, the Court finds that there is "an affiliation between the forum and the underlying controversy" sufficient to allow the Court to exercise specific personal jurisdiction over Transamerica. Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017); accord Brighton Trustees, 2019 WL 6315541, at *8 (finding that plaintiffs challenging Transamerica's MDR increases had satisfied nexus requirement so as to allow the Court to exercise specific personal jurisdiction over Transamerica).

### 3. Reasonableness

Plaintiffs have established the first two prongs regarding purposeful availment and Transamerica's forum-related activities. Therefore, it is Transamerica's burden to "present a compelling case that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F. 3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance several factors: (1) the extent of the defendant's purposeful availment; (2) the burden on the defendant; (3) conflicts of law between the forum state and the defendant's state; (4) the forum's interest in adjudicating the dispute; (5) judicial efficiency; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Roth, 942 F.2d at 623.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Transamerica does not contend that exercising specific personal jurisdiction in the Central District would not "comport with fair play and substantial justice." See Mot. at 9–10; Reply at 4–6. This alone defeats Transamerica's specific personal jurisdiction challenge in light of plaintiffs' prima facie showing regarding the first two prongs. See LSH CO, 2019 WL 3064422, at *7 (finding that it would be reasonable to exercise specific personal jurisdiction over Transamerica in the Central District in case challenging Transamerica's MDR increases because "Plaintiffs have met their burden of proving the first two prongs of specific jurisdiction and Defendant does not contest the third."); accord Galaxia Elecs. Co. v. Luxmax, U.S.A., No. 2:16-cv-05144-JAK-GJS, 2017 WL 2903182, at *10 (C.D. Cal. May 10, 2017) (denying motion to dismiss for lack of personal jurisdiction where plaintiffs made prima facie showing under "the first two prongs of the test for personal jurisdiction . . . [and] Defendants have made no such arguments" that exercise of jurisdiction would not be reasonable).

Transamerica has sufficient contacts with the forum district, and litigating in the Central District of California, where a number of other actions remain pending involving Transamerica and its purported MDR increases, would not impose a considerable burden. See Hamra, 2019 WL 468803, at *6 (finding it would be reasonable to exercise specific personal jurisdiction over Transamerica in the Central District); Feller, 2017 WL 6453262, at *8 (same); Brighton Trustees, 2019 WL 6315541, at *9 (same). The exercise of personal jurisdiction over Transamerica with respect to plaintiffs' claims is proper under the Due Process Clause, and the Court **DENIES** Transamerica's motion to dismiss for lack of personal jurisdiction.[1]

## B. Failure to State a Claim

### 1. Breach of Contract Claim

Plaintiffs' breach of contract claim alleges that Transamerica materially breached the policies' terms in four respects: (1) by increasing the MDRs for reasons other than changes to its future cost expectations; (2) by increasing the MDRs in an attempt to circumvent the guaranteed minimum interest rate; (3) by increasing the MDRs in an attempt to recoup past losses and recover for shortfalls in expected revenues; and (4) by

---

[1] Because the Court concludes that it may properly exercise specific jurisdiction over Transamerica, the Court does not reach the issue of whether Transamerica is subject to general jurisdiction in this forum.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

imposing excessive cost of insurance rates, including by failing to lower these rates. FAC ¶ 96(a)–(d). Transamerica moves to dismiss plaintiffs' claim, in part, insofar as it is premised on plaintiffs' allegations that Transamerica increased the MDRs in an attempt to circumvent the guaranteed minimum interest rate. Mot. at 10.

To state a claim for breach of contract under California law, a party must plead: "(1) the existence of the contract , (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (2011) (internal citation omitted). At the pleading stage, "[w]hen reviewing whether a plaintiff has properly stated a cause of action for breach of contract, we must determine whether the alleged agreement is '*reasonably susceptible*' to the meaning ascribed to it in the complaint." Hervey v. Mercury Casualty Co., 185 Cal. App. 4th 954, 964 (2010) (emphasis added) (citation omitted). "So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." Marzec v. California Pub. Employees Ret. Sys., 236 Cal. App. 4th 889, 909 (2015) (citing Aragon–Haas v. Family Security Ins. Services, Inc., 231 Cal. App. 3d 232, 239 (1991)). Where the terms of the policy are unambiguous, the Court will not infer a limitation on defendants which is not supported by the language of the policy. See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 4:11 ("'Clear and explicit' policy language governs.") (quoting Powerine Oil Co., Inc. v. Supt. Ct., 37 Cal. 4th 377, 390 (2005)).

The Court's previous decision in Brighton Trustees is instructive. There, institutional investor plaintiffs likewise alleged that "Transamerica materially breached the policies by increasing the Monthly Deduction Rates in an attempt to circumvent the guaranteed minimum interest rate." Brighton Trustees, 2019 WL 6315541, at *10 (internal citations, quotation marks, and alterations omitted). The investors contended that by increasing the MDRs by as much as 100%, "Transamerica has used an increase in MDRs to do indirectly what it cannot do directly: it is using the Monthly Deduction Rates to achieve an interest crediting rate that is lower than the guaranteed minimum interest crediting rate, which violates the [investors'] Policies." Brighton Trustees, 2019 WL 6315541, at *10.

Here, plaintiffs allege that "Transamerica materially breached" the policies "[b]y increasing the [MDRs] in an attempt to circumvent the guaranteed minimum interest rate[.]" FAC ¶ 96(b). Plaintiffs contend that they "do not allege that Transamerica

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

breached the policies because it considered interest in raising [the] MDRs. What [p]laintiffs claim is that Transamerica cannot avoid its promise to pay guaranteed minimum interest rates on the policies by directly offsetting those interest obligations through increases in MDRs (thereby effectively paying less than the guaranteed minimum interest rates)." Opp. at 19. That is precisely the argument that the Court has already rejected in Brighton Trustees, insofar as plaintiffs' policies allow Transamerica to consider "interest" in setting the MDRs. See Brighton Trustees, 2019 WL 6315541, at *10.

Plaintiffs cite to the Court's previous decision in Feller for the proposition that "if certain interest rate accruals are 'guaranteed,' a plausible reading of the policies is that defendants may not directly offset them by increasing the MDR based on its interest obligations." Opp. at 20 (citing Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, 2016 WL 6602561, at *10 (C.D. Cal. Nov. 8, 2016)). Plaintiffs concede, however, that "the Court only applied this reasoning in Feller to policies that did not list 'interest' as a cost factor[.]" Opp. at 20.

Following the hearing, the parties submitted a joint statement to the Court on February 12, 2020, clarifying that "74 of the 86 [policies] include 'interest' as an enumerated cost factor[.]" Dkt. 36 at 2. Accordingly, the Court **DISMISSES without prejudice** plaintiffs' breach of contract claim, as alleged in ¶ 96(b) of the FAC, with respect to the 74 policies that include "interest" as an enumerated cost factor. With respect to the 12 policies that do *not* include "interest" as an enumerated cost factor, the Court **DENIES** Transamerica's motion to dismiss plaintiffs' breach of contract claim.

### 2. Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Claim

With respect to the policies that Transamerica issued in California, plaintiffs assert, pursuant to California law, a claim for tortious breach of the implied covenant of good faith and fair dealing. See FAC ¶¶ 106–12. In particular, plaintiffs allege, *inter alia*, that Transamerica breached the implied covenant, giving rise to a claim sounding in tort, by: (1) "charging excessive [MDRs], thereby denying [p]laintiffs the benefit of their actual policy Accumulation Values"; (2) "increasing the [MDRs] to circumvent the guaranteed minimum interest rate under each of [p]laintiffs' [p]olicies"; and (3) "attempting to force [p]laintiffs and other policyholders either to (i) pay exorbitant premiums that Transamerica knows would no longer justify the ultimate death benefits or (ii) lapse or surrender their policies, thereby forfeiting the premiums that have been paid to date[.]" Id. ¶ 109(a)(e)(f).

**CIVIL MINUTES – GENERAL**  'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court previously dismissed the investor plaintiffs' tortious breach claim, based on similar allegations, in Brighton Trustees. See Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 5784925, at *3–8 (C.D. Cal. Nov. 4, 2019). There, the Court distinguished between allegations that Transamerica withheld the benefits of plaintiffs' accumulation values and the monthly accrual of interest on those accounts based on the guaranteed minimum interest rates with allegations that Transamerica attempted, in bad faith, to cause policy lapses or surrenders. Brighton Trustees, 2019 WL 5784925, at *3–8. To the extent that the investors' tortious breach claim was based on allegations that Transamerica charged excessive MDRs in an attempt to minimize plaintiffs' Accumulation Values and accrual of interest on those accounts, the Court concluded those allegations did not give rise a claim for tortious breach because "these benefits ar[ise] under the *savings* component of Transamerica's universal life insurance policies rather than the *insurance* component."[2] Id. at *4 (emphasis in original) (internal citation omitted). That is because "[i]nsurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event," and the investors' allegations did not establish that Transamerica "den[ied] the [investors] the *benefits of the insurance policy*—the security against losses and third party liability." Id. (emphasis in original) (citing Cal. Ins. Code § 22 and Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917, 939 (2004)).

---

[2] The Court recognized that "the majority of cases applying the tort remedy in the insurance context involve allegations of denial of insurance policy proceeds or mishandling of insurance claims." Brighton Trustees, 2019 WL 5784925, at *4. The Court noted that the investor plaintiffs' allegations did not fall within the line of cases recognizing the tort remedy based on allegations that an insurer engaged in claims mishandling because "plaintiffs do not allege that Transamerica deliberately manipulated its processes for managing insurance claims." Id. at * 4 n. 2. On that basis, the Court rejected the investors' reliance on two cases, Notrica v. State Comp. Ins. Fund, 70 Cal. App. 4th 911 (1999) and Sec. Officers Serv., Inc. v. State Comp. Ins. Fund, 17 Cal. App. 4th 887, 892, 898 (1993), for the proposition that "because the value of the death benefit under a life insurance policy is tied directly to the cost of insurance, raising the cost of insurance diminishes, if not destroys, this benefit." Brighton Trustees, 2019 WL 5784925, at *4 n.2. Here, plaintiffs' reliance on these two cases for the same proposition, see Opp. at 15, is similarly misplaced because plaintiffs do not allege that Transamerica engaged in claims mishandling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                  **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|----------|--------------------------|------|--------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court likewise dismissed the investors' tort claim based on allegations that Transamerica attempted, in bad faith, to cause policy lapses or surrenders. Brighton Trustees, 2019 WL 5784925, at *5–8. The Court recognized that, "[t]he California Court of Appeal has extended the tort claim in at least two cases involving allegations outside the context of benefits denial and claims mishandling." Brighton Trustees, 2019 WL 5784925, at *5. Both those cases involved allegations that insurers cancelled the insureds' policies. See Spindle v. Travelers Ins. Companies, 66 Cal. App. 3d 951, 959 (1977); Helfand v. Nat'l Union Fire Ins. Co., 10 Cal. App. 4th 869, 877 (1992). The Court noted that in a subsequent case, Jonathan Neil, the California Supreme Court did not expressly overrule either Spindle or Helfand, because the plaintiffs in Jonathan Neil "were not in the same vulnerable position as those who suffer from the insurer's bad faith claims and settlement practices—they were not denied the benefits of the insurance policy, were not required to prosecute the insurer to vindicate their contractual rights, and had available various administrative, contractual, and tort remedies." Brighton Trustees, 2019 WL 5784925, at *5. The Court distinguished Spindle and Helfand, however, on the basis that the investors did not allege "that Transamerica *cancelled* their policies." Id. (emphasis in original). And, considering the factors that the California Supreme Court considered in Jonathan Neil in declining to extend the tort claim outside the contexts of denial of benefits, claims mishandling, and policy cancellation, the Court concluded that "[c]onsideration of these factors here does not justify extending the tort claim to plaintiffs in this case."[3] Id. Finally, the Court considered and rejected the investors' argument that because an insurance contract is assignable, it is immaterial whether the party seeking to recover in tort is the original insured or an assignee. Id. at *7. That is because "the proper inquiry requires the Court to apply California law as the Court believes the California Supreme Court would apply it" to determine "whether, *in the first instance*, California law recognizes a tort claim where, as here, the allegations fall outside the denial of benefits or claims mishandling contexts." Id. (emphasis in original).

---

[3]    In declining to extending the tort claim to the investors, the Court analyzed the following factors: "(1) the ability of marketplace competition to discipline the insurer's alleged misconduct; (2) whether the alleged misconduct denies the insured the benefits of the insurance policy, namely the security against losses and third party liability; (3) whether the alleged misconduct required the insureds to prosecute the insurer in order to enforce its rights; and (4) the availability of other administrative, contractual, and tort remedies." Brighton Trustees, 2019 WL 5784925, at *5 (citing Jonathan Neil, 33 Cal. 4th at 940–41).

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Here, plaintiffs fail to provide a compelling basis for the Court to depart from its reasoning in <u>Brighton Trustees</u>. Plaintiffs allege that the Accumulation Value and the accrual of interest on that amount constitute "insurance components" because "[t]he Accumulation Value is used to fund the policy charges, including the COI charges, and it makes up part of the death benefit." FAC ¶ 8. However, plaintiffs also allege that the Accumulation Value consists of "premiums paid in excess of the cost of insurance (and certain other policy charges)" which "accumulate . . . and earn interest at a rate that will not be lower than a 'guaranteed minimum interest rate[.]'" <u>Id.</u> In this regard, "to the extent plaintiffs' tortious breach claim depends on allegations that Transamerica has withheld plaintiffs' accumulation values and related accrual of interest, plaintiffs' claim 'arises less from the relationship between plaintiffs as insureds and Transamerica as insurer than it does from the relationship between plaintiffs and Transamerica as a bank (or similar financial institution).'"[4] <u>Brighton Trustees</u>, 2019 WL 5784925, at *4 (internal alterations

---

[4]     During the hearing, plaintiffs' counsel argued that the Accumulation Value "is insurance" because the agreement which creates the Accumulation Value, Transamerica's universal life insurance policy, is an insurance contract. That Transamerica's universal life insurance policies are insurance contracts for some purposes, however, does not mean that all benefits due under the contract are *insurance* benefits for the purposes of the tort remedy. For example, in another case involving Transamerica, the California Supreme Court concluded that the purported denial of benefits owed under a surety contract did not give rise to tort remedies. <u>Cates Constr., Inc. v. Talbot Partners</u>, 21 Cal. 4th 28, 51–52 (1999). Although the surety contract at issue in that case was subject to provisions of the California Insurance Code, the Court declined to extend the tort remedy for the purported bad faith denial of benefits due under the surety contract because "it does not follow that a surety bond equates to a policy of insurance under the common law or common law theories of liability. Nor does it follow that the unique policy reasons which justify extraordinary remedies in the insurance policy context are similarly implicated for bonds guaranteeing the performance of a commercial construction contract." <u>Id.</u> at 52. In concluding that the mere inclusion of surety contracts in the Insurance Code did not give rise to the tort remedy, the Court noted that "[c]ase law makes clear . . . that tort remedies for breach of the implied covenant are permitted in the insurance policy setting for policy reasons pertaining to the distinctive nature of such contracts and the relationship between the contracting parties." <u>Id.</u> at 50. Notwithstanding the fact that Transamerica's universal life insurance policies create the Accumulation Values and that these policies may be

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

omitted) (citing EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co., 309 F. Supp. 3d 89, 96 (S.D.N.Y. 2018)).

To the extent that plaintiffs' tortious breach claim turns on allegations that Transamerica *attempted*, in bad faith, to cause policy lapses or surrenders, the claim falls outside the contexts where California courts have recognized the tort cause of action: denial of *insurance* benefits, mishandling of claims, and *cancellation* of policies. The Court must therefore "apply California law as the Court believes the California Supreme Court would apply it." Brighton Trustees, 2019 WL 5784925, at *7 (internal alterations omitted) (citing Rex v. Chase Home Fin. LLC, 905 F. Supp. 2d 1111, 1156 (C.D. Cal. 2012)). In Jonathan Neil, the California Supreme Court declined to extend the tort cause of action outside the denial of insurance benefits, claims mishandling, and policy cancellation contexts where the plaintiffs "had available various administrative, contractual, and tort remedies." Jonathan Neil, 33 Cal. 4th at 941. As such, the Court in Brighton Trustees declined to extend the tort claim to the investor plaintiffs because "the Court has already determined that [the investors] have stated claims for breach of contract and breach of the implied covenant sounding in contract—therefore, this is not a case where plaintiffs have no other 'available various administrative contractual, and tort remedies.'" 2019 WL 5784925, at *6.

Here, plaintiffs are similarly situated to the investors in Brighton Trustees, in that plaintiffs have remedies available other than a claim for tortious breach of the implied covenant. Indeed, plaintiffs have asserted claims for breach of contract and breach of the implied covenant sounding in contract, and, at this juncture, Transamerica has not sought dismissal of those claims. Accordingly, this is not a case where plaintiffs have no other "available . . . administrative, contractual, and tort remedies." [5] Jonathan Neil, 33 Cal. 4th at 941.

---

subject to the California Insurance Code, for the reasons discussed above, caselaw and policy reasons indicate that the Accumulation Values are not "insurance" benefits.

[5] Plaintiffs argue that "[e]ven through the Court may not find [p]laintiffs, as investor-policyholders, to be as sympathetic as the Thompson plaintiffs, to deny [p]laintiffs the ability to seek Brandt fees (at the least) denies to the entire class of assignees the ability to defend themselves from insurance company bad faith conduct." Opp. at 8. In Brandt v. Superior Court, the California Supreme Court held that "[w]hen an insurer tortiously withholds *benefits*, . . . attorney's fees, reasonably incurred to compel payment of the *policy*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|----------|--------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

For the foregoing reasons, the Court concludes that plaintiffs fail to state a claim for tortious breach of the implied covenant of good faith and fair dealing. The Court therefore **DISMISSES** plaintiffs' claim for tortious breach in its entirety **without prejudice**.

### 3.      Conversion Claim

Plaintiffs also assert a claim for conversion against Transamerica. FAC ¶¶ 113–19. The gravamen of plaintiffs' claim is that plaintiffs "entrusted Transamerica with funds, in the form of premium payments, which Transamerica maintained in the policy accounts where they were used to pay the monthly deductions," and "Transamerica diverted those funds from these accounts for its own benefit by taking unauthorized deductions." Opp. at 18. According to plaintiffs, "[t]his is conversion." Id. California law recognizes "the tort of conversion . . . as the wrongful exercise of dominion over personal property of another." Voris v. Lampert, 7 Cal. 5th 1141, 1150 (2019) (internal citation and quotation mark omitted). To establish a claim for conversion, a plaintiff must establish the following elements: "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." Id. (internal citations and quotation marks omitted). The Court addresses each element in turn.

#### a.      Property Right

Plaintiffs allege that they "had a property interest in the funds Transamerica deducted from their Accumulation Values in excess of the amounts permitted by the terms of the Policies due to Transamerica's wrongful increases in Monthly Deduction Rates." FAC ¶ 114. Transamerica asserts that plaintiffs cannot establish the requisite property rights needed to state a claim for conversion because: (1) plaintiffs' "purported conversion claim is nothing more than an effort to repackage their beach of contract claim"; (2) because Transamerica "did not interfere with [p]laintiffs' immediate right of possession of an identifiable sum of money." Mot. at 16.

##### i.      Overcharge Theory

---

*benefits*, [are] recoverable[.]" 37 Cal. 3d 813, 815 (1985) (emphases added). Plaintiffs do not provide authority for the proposition that Brandt fees are recoverable where no *insurance* benefits have been withheld. And, the Court has already concluded that plaintiffs' allegations do not implicate an *insurance* benefit.

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court previously rejected Transamerica's argument that "[i]f the Monthly Deductions were too high as [p]laintiffs allege, they can sue for that overcharge as a breach of contract, but it is not conversion of [p]laintiffs' personal property." Opp. at 19 n.15; see Brighton Trustees, 2019 WL 5784925, at *10. In that case, the Court noted that the investors' complaint did not "allege that plaintiffs transferred title to their Accumulation Values to Transamerica. To the contrary, plaintiffs allege that they 'had a property interest in the funds Transamerica deducted from their Accumulation Values'; that 'specific funds were placed in the custody of Transamerica for the benefit of [p]laintiffs; that 'Transamerica continues to retain these funds unlawfully'; and that 'at no time did plaintiffs consent to such wrongful deduction and retention of funds by Transamerica.'" Brighton Trustees, 2019 WL 5784925, at *10 (internal alterations omitted). Accordingly, the Court concluded that "[t]his is therefore not a case where, like the relationship between a bank and depositor, the relation between plaintiffs and Transamerica 'is that of a debtor and creditor.'" Gutierrez v. Wells Fargo & Co., 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009).

Here, Transamerica similarly contends that "[p]laintiffs are essentially suing for the conversion of contract rights" and that plaintiffs' rights in the Accumulation Values "are not personal property subject to conversion." Mot. at 18. At the pleading stage, however, the Court is required to take the allegations in the FAC as true. And, the FAC alleges: that "[p]laintiffs had a property interest in the funds Transamerica deducted from their Accumulation Values"; that these "specific funds [were] placed in the custody of Transamerica for the benefit of [p]laintiffs"; that "Transamerica continues to retain these funds unlawfully"; and that '[a]t no time did [p]laintiffs or their predecessors consent to such wrongful deduction and retention of funds by Transamerica." FAC ¶¶ 114–16. As the Court determined in Brighton Trustees, "[t]he Court does not find persuasive Transamerica's argument that [plaintiffs'] conversion claim is based on an overcharge theory." 2019 WL 5784925, at *10.

### ii.    Immediate Right to Possession

Transamerica next argues that "[b]ecause [p]laintiffs do not allege an *immediate right of possession* to an identifiable sum of money, their conversion claim should be dismissed." Mot. at 18 (emphasis added). To maintain an action for conversion, a "plaintiff must prove ownership with the right of possession, or actual possession at the time of the alleged conversion." McCoy v. Nw. Cas. & Sur. Co., 3 Cal. App. 2d 534, 537 (1935). Accordingly, "[a]s a general rule, the mere ownership of property, if not coupled with possession or a right to immediate possession, is not a sufficient basis to maintain an

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:19-cv-06478-CAS(GJSx) | | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

action for conversion." Michael Paul Thomas, et al., <u>Cal. Civ. Prac. Torts</u>, § 15:3 (November 2019 Update).

In <u>Brighton Trustees</u>, the Court dismissed the investors' conversion claim without prejudice because the investors did not "adequately allege[] a 'right to immediate possession' of the funds that form the basis for [their] conversion claim." 2019 WL 5784925, at *10. That is because the investors' complaint alleged that "Accumulation Value is paid out only upon the death of [the] insured, and a *policyholder cannot withdraw the Accumulation Value*, except by terminating the policy or reducing the death benefit by the same amount." <u>Id.</u> (emphasis in original) (internal alterations omitted).

Here, the FAC similarly alleges that "a policyholder cannot withdraw the Accumulation Value, except by terminating the policy or reducing the death benefit by the same amount." FAC ¶ 9. Accordingly, the Court concludes that plaintiffs have not adequately alleged a "right to immediate possession" of the funds that form the basis for their conversion claim.

### iii.     Identifiable Sum of Money

Pursuant to California law, "money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved." <u>Voris</u>, 7 Cal. 5th at 1151. There is no requirement, however, that "each coin or bill be earmarked." <u>Id.</u> Based on these requirements, Transamerica contends that dismissal of plaintiffs' conversion claim is proper "[b]ecause [p]laintiffs do not allege an immediate right of possession to an *identifiable sum* of money[.]" Mot. at 18 (emphasis added)

Transamerica relies on two cases for this proposition. In <u>PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP</u>, the California Court of Appeal affirmed the grant of summary adjudication in favor of defendants on the plaintiffs' conversion claim. 150 Cal. App. 4th 384, 397 (2007). There, the plaintiffs alleged that defendants had converted the money inside 10 duffel bags, each containing $500,000.00. <u>Id.</u> However, the Court of Appeal noted that "[t]he evidence and plaintiffs' separate statement of undisputed facts refer to as few as eight bags or '8–9 bags' and up to 18 bags of money that were removed from Laing's residence." <u>Id.</u> Moreover, "there [wa]s evidence that one bag contained as little as $250,000 and that other bags contained as much as $500,000." <u>Id.</u> Thus, summary adjudication was appropriate because "[t]he evidence of the sum removed from Laing's residence reflects amounts varying by millions of dollars" such that

**CIVIL MINUTES – GENERAL**        **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

"[t]he record is not sufficient to fulfill the requirement that if money is the subject of the conversion action, a specific sum be identified." Id.

Similarly, in Vu v. California Commerce Club, Inc., the California Court of Appeal affirmed the trial court's grant of summary judgment in favor of a defendant card club, based on the plaintiff patron's claim that the club's retention of funds, confiscated for alleged cheating, constituted conversion. 58 Cal. App. 4th 229, 231 (1997). The Court of Appeal held that summary judgment was appropriate because "neither by pleading nor responsive proof did plaintiffs identify any specific, identifiable sums that the club took from them." Vu, 58 Cal. App. 4th at 235. Accordingly, "[t]hat rendered the generalized claim for money not actionable as conversion." Id.

The Court of Appeal's decisions in PCO and Vu, both based on a developed evidentiary record, say nothing about what is required to withstand a motion to dismiss under Rule 12(b)(6). "At the pleading stage in federal court, it is only necessary for a plaintiff to allege an amount of money that is 'capable of identification,' rather than specifically identify the sum that would be required to prove the claim in a motion for summary judgment." Andreoli v. Youngevity Int'l, Inc., No. 16-cv-02922-BTM-JLB, 2018 WL 1470264, at *10 (S.D. Cal. Mar. 23, 2018). "[A]t this stage, plaintiffs need only describe the property allegedly converted sufficiently that defendants can answer and develop a defense." Lennard v. Yeung, No. 2:10-cv-09322-MMM-AGR, 2011 WL 13217784, at *16 (C.D. Cal. June 7, 2011).

Here, plaintiffs identify each of the 86 policies at issue in this case by both owner and policy number. Dkt. 26-1, Exhibit A. Accordingly, plaintiffs have alleged an amount of money that is capable of identification sufficient to withstand a motion to dismiss. See Natomas Gardens Inv. Grp., LLC v. Sinadinos, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010) ("Considering the liberal pleading requirements in federal court, the court concludes that at the pleading stage it is only necessary for plaintiffs to allege an amount of money that is 'capable of identification.' However, at summary judgment plaintiffs will be required to prove a specific, identifiable sum.").

### b.    Disposition of Property

According to Transamerica, "[b]ecause the Monthly Deductions were authorized, [p]laintiffs' conversion claim fails to allege a disposition of their property in a manner inconsistent with their property rights[.]" Mot. at 19. Transamerica alternatively seeks dismissal on this basis.

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court previously rejected Transamerica's argument on this basis in <u>Brighton Trustees</u>. There, the Court noted that the investors "and Transamerica . . . dispute whether Transamerica's deductions were authorized" and "[t]his dispute forms the basis for [the investors'] allegations that Transamerica 'increased Monthly Deduction Rates and made Monthly Deductions in unauthorized amounts from the Accumulation Values' and that 'at no time did plaintiffs consent to such wrongful deduction and retention of funds by Transamerica.'" <u>Brighton Trustees</u>, 2019 WL 5784925, at *11 (internal citations and alterations omitted). The Court reasoned that these allegations were "sufficient, at the pleading stage, to satisfy the disposition of property element for conversion." <u>Id.</u>

Here, plaintiffs and Transamerica similarly dispute whether Transamerica's deductions were authorized. <u>See</u> Mot. at 19; Opp. at 19. That dispute forms the basis for plaintiffs' allegations that Transamerica "increase[ed] Monthly Deduction Rates and ma[de] Monthly Deductions in unauthorized amounts from the Accumulation Values" and that "[a]t no time did [p]laintiffs or their predecessors consent to such wrongful deduction and retention of funds by Transamerica." FAC ¶¶ 115–16. These allegations satisfy the disposition of property element at the pleading stage.[6] <u>See ESG Capital Partners, LP v.</u>

---

[6]     In <u>Bally v. State Farm Life Ins. Co.</u>, another district court determined that a consumer had raised triable issues as to the disposition of property element required for conversion based on allegations that an insurance company deducted funds in authorized amounts from the consumer's universal life insurance policies. No. 18-cv-04954-CRB, 2019 WL 3891149, at *4. (N.D. Cal. Aug. 19, 2019). The court rejected the "overcharge" argument that Transamerica advances here because the consumer's "claim is not that she was overcharged, but rather that State Farm transferred funds that it should not have, because the account value belonged to the policyholder, and so when State Farm transferred funds without authorization, that constituted conversion." <u>Id.</u> Here, Transamerica urges that "<u>Bally</u> was issued four days after . . . <u>Voris</u> and did not address <u>Voris</u>[,] . . . is contrary to California law as expressed in <u>Voris</u>[,] and is factually distinguishable[.]" Mot. at 19. The Court notes that on November 25, 2019, the court in <u>Bally</u> certified its order denying summary judgment for interlocutory appeal. <u>See Bally v. State Farm Life Ins. Co.</u>, No. 18-cv-04954-CRB (N.D. Cal.), Dkt. 99. However, <u>Voris</u> and <u>Bally</u> are not inconsistent. <u>Voris</u> considered whether earned but unpaid wages could constitute a property right that could form the basis for a conversion claim, while <u>Bally</u> considered whether the allegedly improper deduction of funds from a consumer's universal life insurance policy represented a disposition of property in a manner inconsistent with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|----------|--------------------------|------|-------------------|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Stratos, 828 F.3d 1023, 1038 (9th Cir. 2016) (finding that, on a motion to dismiss, investor had stated conversion claim where investor alleged that its "attorney . . . placed its funds into an unauthorized trust account and issued checks . . . using those funds . . . without permission" because "an unauthorized transfer of funds is sufficient to constitute disposal of a plaintiff's funds in a manner inconsistent with the plaintiff's rights.").

### c.    Resulting Damage

Plaintiffs allege that "Transamerica intended to cause damage to [p]laintiffs by increasing Monthly Deduction Rates and deducting more from [p]laintiffs' Policies' Accumulation Values than was authorized[.]" FAC ¶ 118. As a result, plaintiffs contend that they have suffered damages "in an amount to be proven at trial, but in any event that exceeds $75,000, exclusive of interest." Id. ¶ 119. Plaintiffs' alleged damages, the difference between what Transamerica deducted from plaintiffs' Accumulation Values and what the policies authorized, are sufficient at the pleading stage. See Cal. Civ. Code § 3336 ("The detriment caused by the wrongful conversion of personal property is presumed to be . . . [t]he value of the property at the time of the conversion . . . or . . . an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of[.]").

## V.    CONCLUSION

In accordance with the foregoing, the Court orders as follows:

1.    The Court **DENIES** Transamerica's motion to dismiss for lack of personal jurisdiction;

2.    As to the 74 policies that include "interest" as an enumerated cost factor, the Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 96(b) of the FAC, **without prejudice**. The Court **DENIES** Transamerica's motion to dismiss plaintiffs' breach of contract claim, as alleged in ¶ 96(b) of the FAC, with respect to the 12 policies that do not include "interest" as an enumerated cost factor;

---

the consumer's property interest in those funds. In other words, Voris appears to address the first element of conversion, while Bally appears to address the second.

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:19-cv-06478-CAS(GJSx) | Date | February 19, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

3.   The Court **DISMISSES** plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing **without prejudice**;

4.   The Court **DISMISSES** plaintiffs' conversion claim **without prejudice**.

Plaintiffs shall file a second amended complaint within **thirty (30) days**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |