UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**           'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Steven Pesner

Jacob Lewis

Khai LeQuang

Attorneys Present for Defendants:

Hutson Smelley

**Proceedings:** TELEPHONE HEARING ON DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (Dkt. [ 42 ], filed April 15, 2020)

## I.     INTRODUCTION AND BACKGROUND

The Court previously set out the factual and procedural background of this case in its February 19, 2020 order. Dkt. 37 ("MTD Order"). For that reason, the Court only sets forth those facts necessary to resolve Transamerica's present motion to dismiss.

Plaintiffs filed this action against defendant Transamerica Life Insurance Company ("Transamerica") on July 25, 2019, challenging Transamerica's Monthly Deduction Rate ("MDR") increases. Dkt. 1. On February 19, 2020, the Court granted in part and denied in part Transamerica's motion to dismiss plaintiffs' first amended complaint ("FAC"). See MTD Order. The Court denied Transamerica's motion to the extent that Transamerica sought dismissal for lack of personal jurisdiction. Id. at 11. The Court dismissed, however, plaintiffs' claims for breach of contract, tortious breach of the implied covenant and good faith and fair dealing, and conversion without prejudice. Id. at 23–24.

With respect to plaintiffs' breach of contract claim, "Transamerica move[d] to dismiss plaintiffs' claim . . . insofar as it is premised on plaintiffs' allegations that Transamerica increased the MDRs in an attempt to circumvent the guaranteed minimum interest rate." MTD Order at 12. Because 74 of the 86 policies at issue in plaintiffs' FAC included "interest" as an enumerated cost factor that Transamerica could consider in increasing the MDRs, the Court dismissed without prejudice plaintiffs' breach of contract claim as to those 74 policies. Id. at 13. The Court denied Transamerica's motion to dismiss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

plaintiffs' breach of contract claim as to the remaining 12 policies "that do *not* include 'interest' as an enumerated cost factor[.]" Id. (emphasis in original).

Similarly, the Court dismissed without prejudice plaintiffs' claim for breach of the implied covenant sounding in tort. See generally MTD Order. The Court explained that in other cases challenging Transamerica's MDR increases, the Court has "distinguished between allegations that Transamerica withheld the benefits of plaintiffs' accumulation values and the monthly accrual of interest on those accounts based on the guaranteed minimum interest rates with allegations that Transamerica attempted, in bad faith, to cause policy lapses or surrenders." Id. at 14 (citing Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 5784925, at *3–8 (C.D. Cal. Nov. 4, 2019). The Court reasoned that "to the extent plaintiffs' tortious breach claim depends on allegations that Transamerica has withheld plaintiffs' accumulation values and related accrual of interest, plaintiffs' claim arises less from the relationship between plaintiffs as insureds and Transamerica has insurer than it does from the relationship between plaintiffs and Transamerica as a bank (or similar financial institution)." MTD Order at 16 (internal citations and quotation marks omitted). "That is because the benefits arise under the *savings* component of Transamerica's universal life insurance policies rather than the *insurance* component." Id. at 14 (emphases in original) (internal citation and quotation marks omitted).

The Court next determined that "[t]o the extent that plaintiffs' tortious breach claim turns on allegations that Transamerica *attempted*, in bad faith, to cause policy lapses or surrenders, the claim falls outside the contexts where California courts have recognized the tort cause of action: denial of *insurance* benefits, mishandling of claims, and *cancellation* of policies." MTD Order at 17 (emphases in original). The Court explained that it must "apply California law as the Court believes the California Supreme Court would apply it." Id. at 17 (internal citation and quotation marks omitted). And, considering the factors that the California Supreme Court identified in declining to extend the tort claim in Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917 (2004), the Court "conclude[d] that plaintiffs fail to state a claim for tortious breach of the implied covenant of good faith and fair dealing." MTD Order at 18.

Plaintiffs thereafter filed the operative second amended complaint on March 20, 2020. Dkt. 38 ("SAC"). The SAC asserts claims for: (1) breach of contract; (2) contractual breach of the implied covenant of good faith and fair dealing; (3) tortious breach of the implied covenant of good faith and fair dealing; (4) conversion; and (5) declaratory relief. See generally SAC. On April 15, 2020, Transamerica filed a motion to partially dismiss

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**         'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the SAC.[1]  Dkt. 42 ("Mot."). Plaintiffs filed an opposition on May 22, 2020. Dkt. 43 ("Opp."). Transamerica filed a reply on June 8, 2020. Dkt. 44 ("Reply").

The Court held a hearing on June 22, 2020. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.  LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under 12(b)(6), a district court should dismiss a claim if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.2d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a 12(b)(6) motion, a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1988). A court must read the complaint in the light most favorable to the non-movant. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling

---

[1]  Transamerica seeks to dismiss: (1) plaintiffs' breach of contract claim as to those policies which include "interest" as an enumerated cost factor; and (2) plaintiffs' claim for breach of the implied covenant sounding in tort. See Mot. Although the Court previously dismissed without prejudice plaintiffs' conversion claim as alleged in the FAC, see MTD Order, it does not appear that Transamerica's present motion seeks to dismiss plaintiffs' conversion claim as alleged in the SAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal. 556 U.S. at 679.

Unless a court converts a 12(b)(6) motion into a motion for summary judgement, the court cannot consider material outside of the complaint, such as facts presented in briefs, affidavits, or discovery materials. In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 25 (1998). However, a court may consider exhibits submitted with or alleged in the complaint, and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be granted freely. Fed. R. Civ. P. 15(a). However, the court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

#### A. Breach of Contract Claim

Plaintiffs allege that Transamerica breached plaintiffs' policies in four material respects. See SAC ¶ 103. Transamerica moves to dismiss, in part, plaintiffs' breach of contract claim to the extent that plaintiffs' claim is premised on plaintiffs' allegation that Transamerica breached plaintiffs' policies by "increasing the Monthly Deduction Rates in an attempt to circumvent the guaranteed minimum interest rate." Mot. at 8–9; SAC ¶ 103(b).

The Court previously dismissed plaintiffs' breach of contract claim to the extent that the claim was premised on an identical allegation in plaintiffs' FAC. See MTD Order at 12–13 (dismissing plaintiffs' breach of contract claim, based on allegation that "Transamerica materially breached the policies by increasing the MDRs in an attempt to circumvent the guaranteed minimum interest rate.") (internal citation and alterations omitted). Here, plaintiffs concede that at they have not included any additional allegations in the SAC in support of this claim that differ from those in plaintiffs' FAC. See Opp. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

4 n.7 ("Plaintiffs re-alleged their claim that [Transamerica] breached the express terms of the Policies by increasing MDRs in an attempt to circumvent the guaranteed minimum interest rate to preserve the claim for appeal as to the 74 Policies that include 'interest' as an enumerated cost factor."). Accordingly, as to the 74 policies which include "interest" as an enumerated cost factor, the Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 103(b) of the SAC, **with prejudice.** See Brighton Trustees, 2019 WL 5784925, at *3 (dismissing institutional investors' breach of contract claim with prejudice where investors acknowledged that investors did not include any additional allegations from those the Court previously found insufficient to state a claim but indicated that they were "re-alleg[ing] their claim that Transamerica breached the express terms of the Policies by increasing MDRs in an attempt to circumvent the guaranteed minimum interest rate to preserve the claim for appeal.").

### B. Tortious Breach of the Implied Covenant Claim

Plaintiffs assert a claim for breach of the implied covenant of good faith and fair dealing sounding in tort. See SAC ¶¶ 113–23. According to plaintiffs, the SAC contains additional allegations which cure the deficiencies that the Court previously identified in the Court's prior order dismissing plaintiffs' tortious breach claim. Opp. at 4. Indeed, plaintiffs make a number of arguments as to why the Court should deny Transamerica's present motion to dismiss. The Court addresses these arguments in turn.

#### 1. Denial of Insurance Benefit

In other cases where policyholders have challenged Transamerica's MDR increases as a breach of the implied covenant sounding in tort, "the Court has previously distinguished allegations that Transamerica has denied policyholders an 'insurance benefit' from allegations that Transamerica has attempted to induce, in bad faith, policyholders to lapse or surrender their policies." EFG Bank AG v. Transamerica Life Ins. Co., No. 2:16-cv-08104-CAS-GJS, 2020 WL 1849493, at *3 (C.D. Cal. Apr. 13, 2020). Here, plaintiffs contend that the SAC contains additional allegations which, according to plaintiffs, make clear that by "taking funds from [p]laintiffs' Accumulation Value accounts by impermissibly raising MDRs still constitutes the deprivation of an insurance benefit sufficient to state a tortious breach claim." Opp. at 13.

Plaintiffs advance a number of arguments in support of their contention that Transamerica's alleged misconduct has deprived plaintiffs of an "insurance benefit," such that plaintiffs' allegations fall in the traditional line of cases where California courts have recognized the tort claim. For example, according to plaintiffs, "[t]he Accumulation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Values were regulated as insurance, were part of the death benefit to be paid upon the death of the insured, and were marketed as insurance." Opp. at 14. The Court has previously rejected plaintiffs' argument that the Accumulation Values and related interest constitute "insurance" benefits simply because the agreements which create these items, Transamerica's universal life insurance policies, are "insurance" contracts. See MTD Order at 16 n.4 ("That Transamerica's universal life insurance policies are insurance contracts for some purposes, however, does not mean that all benefits due under the contract are *insurance* benefits for the purposes of the tort remedy.") (emphasis in original). The Court has likewise concluded that "[n]otwithstanding the fact that Transamerica's universal life insurance policies create the Accumulation Values and that these policies may be subject to the California Insurance Code, . . . caselaw and policy reasons indicate that the Accumulation Values are not 'insurance' benefits." Id. at 16–17 n.4.

Plaintiffs also argue that "[b]ecause the value of the death benefit under a life insurance policy is tied directly to the cost of insurance, raising the cost of insurance diminishes, if not destroys, this benefit." Opp. at 17. According to plaintiffs, then, "the MDR increases deny [p]laintiffs the benefits of their Policies by making the Policies no longer worth keeping." Id. at 19. Plaintiffs further aver that "[e]ven if the value of the policy is not destroyed, [Transamerica's] MDR increases shorten the period of coverage, denying [p]laintiffs the full coverage of the Policies." Id. at 17. In another case where institutional investors challenged Transamerica's MDR increases, the Court has previously rejected the argument that Transamerica's alleged misconduct implicates an "insurance" benefit simply because Transamerica's MDR increases made the policies economically unviable. See EFG Bank, 2020 WL 1849493, at *7 (declining to extend tort claim based on allegations that "the benefit of a life insurance policy is commensurate with its cost" and that "[n]o one would buy life insurance if the cost was greater than the benefit."). Similarly, the Court rejected the argument that Transamerica's alleged misconduct deprived policyholders of an "insurance" benefit by shortening the period of coverage. See id. at *4 ("It does not follow . . . that Transamerica's MDR increases 'shortened the period of coverage' of plaintiffs' policies because 'the period of coverage' under the policies was the period during which plaintiffs maintained a positive Accumulation Value and because the policies permitted Transamerica to adjust and deduct the MDRs from plaintiffs' Accumulation Values. That plaintiffs complain that Transamerica increased the MDRs in a way that violated other provisions of the policies does not mean that Transamerica shortened the period of coverage so as to deny plaintiffs an 'insurance benefit' due under plaintiffs' policies.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**            'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Nor do the cases upon which plaintiffs rely compel a finding that Transamerica's alleged misconduct, resulting in a depletion of the Accumulation Value and related interest, has deprived plaintiffs of an "insurance" benefit. For example, plaintiffs rely on Notrica v. State Comp. Ins. Fund, 70 Cal. App. 4th 911 (1999) and Sec. Officers Serv., Inc. v. State Comp. Ins. Fund, 17 Cal. App. 887 (1993) in support of their argument that Transamerica's MDR increases constitute raises in premiums which implicate an "insurance" benefit. Opp. at 17–18. The Court has previously distinguished Notrica and Sec. Officers on the basis that the plaintiffs in those cases alleged "improprieties in claims" handling, whereas policyholders challenging Transamerica's MDR increases—like plaintiffs here—"do not allege that Transamerica engaged in the mishandling of claims that already became due." EFG Bank, 2020 WL 1849493, at *8 n.3. Plaintiffs urge that while these cases instruct "that conduct that results in higher future premiums gives rise to a tort remedy when that conduct occurs in the claims handling context, it was not the claims handling aspect that gave rise to the tort remedy. It was the effect of that conduct—higher premiums to the policyholders—that gave rise to the tort remedy." Opp. at 18–19. The Court does not find plaintiffs' argument persuasive. See Tilbury Constructors, Inc. v. State Comp. Ins. Fund, 137 Cal. App. 4th 466, 480 (2006) (citing cases such as Notrica and Sec. Officers and noting that "[a] closer examination of these cases reveals that *it is not the discretionary nature of the actions of the insurance company that gives rise to liability*, but rather the fact that these actions take place in the context of the primary duties of the insurance company under the policy.") (emphasis added). Similarly, plaintiffs' reliance on Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566 (1973), is misplaced because in that case, a policyholder challenged his insurer's failure to pay for a covered loss.[2] By contrast, in cases challenging Transamerica's MDR increases, the Court has consistently recognized that Transamerica's MDR increases do not present a situation where "there has been a covered loss requiring the payment of any *insurance* benefits, namely the death benefit,

---

[2] In Gruenberg, the policyowner alleged that a fire at his place of business—a bar—constituted a covered loss triggering his insurer's obligation to pay benefits, but that the insurer refused to pay out benefits that had become due under the policy. 9 Cal. 3d at 575. The policyowner alleged that the insurer instead engaged in "a scheme to deprive him of the benefits of the fire policies" and "encouraged criminal charges by falsely implying that he had a motive to commit arson, and in that, knowing plaintiff would not appear for an examination during the pendency of criminal charges against him, . . . us[ing] his failure to appear as a pretense for denying liability under the policies." Gruenberg, 9 Cal. 3d at 575.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

under the Policy." Brighton Trustees v. Transamerica Life Ins. Co., No. 2:19-cv-04210-CAS-GJS, 2019 WL 6315541, at *14 (C.D. Cal. Aug. 28, 2019).

Finally, plaintiffs argue that "California courts have recognized that wrongful cancellation of insurance policies may give rise to a claim for tortious bad faith." Opp. at 17. For example, in Spindle v. Travelers Ins. Cos., the California Court of Appeal concluded that the tort claim "is applicable to subject an insurer to liability to its insured for cancelling a malpractice insurance policy in accordance with permissible terms of the cancellation provisions of the policy, if the reasons for such cancellation are such as to make the cancellation a violation of the implied covenant of good faith and fair dealing." 66 Cal. App. 3d 951, 959 (1977). Similarly, in Helfand v. Nat'l Union Fire Ins. Co., the California Court of Appeal determined that the tort claim was available against an insurer who cancelled the insureds' policies in the final year of coverage, despite the insureds' prepaying of premiums. 10 Cal. App. 4th 869, 877 (1992). The California Supreme Court subsequently addressed Spindle and Helfand in Jonathan Neil, concluding that "[w]e have no occasion to decide . . . whether and when the cancellation of an insurance contract for improper motives could ever give rise to tort damages" but acknowledged that "[t]here may be circumstances in which cancellation of the policy denies the insured the benefits of the policy." 33 Cal. 4th at 941. Even assuming *arguendo* that an insurer's cancelling a policy denies the insured an "insurance" benefit, plaintiffs here do not allege that Transamerica *cancelled* plaintiffs' policies.

For the foregoing reasons, the Court concludes that the SAC fails to establish that Transamerica's alleged misconduct has deprived plaintiffs of an "insurance" benefit.

2.   **Jonathan Neil Factors**

Plaintiffs also allege that Transamerica increased its MDRs in a bad faith attempt to force plaintiffs to "lapse or surrender their Policies, thereby forfeiting the premiums that had been paid do date as well as the expected value of the death benefits[.]" SAC ¶ 121. "Where, as here, institutional investors have asserted a claim for tortious breach of the implied covenant against Transamerica based on allegations that Transamerica increased its MDRs in an attempt to induce policy lapses or surrenders, the Court has noted that in Jonathan Neil, the California Supreme Court suggested a number of factors that courts should consider in determining whether to extend the tort claim outside the denial of benefits and claims mishandling contexts[.]" EFG Bank, 2020 WL 1849493, at *4. These factors include: "(1) the ability of marketplace competition to discipline the insurer's alleged misconduct; (2) whether the alleged misconduct denies the insured the benefits of

Case 2:19-cv-06478-CAS-GJS   Document 47   Filed 06/22/20   Page 9 of 13   Page ID #:854

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the insurance policy, namely the security against losses and third party liability; (3) whether the alleged misconduct required the insureds to prosecute the insurer in order to enforce its rights; and (4) the availability of other administrative, contractual, and tort remedies." [3] Id. (internal citation omitted). Plaintiffs argue that "[t]he California Supreme Court's reasons for denying the tort claim in Jonathan Neil do *not* exist in the present case and instead support allowing Plaintiffs to assert a claim for tortious breach." Opp. at 16 (emphasis in original).

### a. Discipline by the Secondary Market

In Jonathan Neil, the California Supreme Court declined to extend the tort remedy outside the claims mishandling and denial of benefits contexts to an insurer's practice of knowingly and retroactively billing insureds for higher premiums than were actually owed, based, in part, on its determination that, "generally speaking, the insurer's ability to charge excessive premiums will be disciplined by competition among insurers." 33 Cal. 4th at 939. Accordingly, plaintiffs in this case argue that "[b]ecause [Transamerica's] ability to charge excessive rates will . . . not be 'disciplined by competition among insurers,' the Court should allow [p]laintiffs to proceed with their tortious breach claim." Opp. at 16.

The Court has consistently determined, however, that extending the tort claim to institutional and individual investors that purchased Transamerica's policies on the secondary market is unnecessary to deter insurer misconduct. See, e.g., Brighton Trustees, 2019 WL 5784925, at *6 (declining to extend tort remedy to institutional investors because "plaintiffs participate in the secondary market which exists because the buyer, often a bank, insurance company, or pension funds seek investments uncorrelated to the traditional equity and debt capital markets.") (internal citation and alterations omitted); EFG Bank, 2020 WL 1849493, at *6 (rejecting institutional investors' argument that extending tort claim was necessary to deter insurer misconduct since "institutional investors *can* turn to

---

[3] Plaintiffs argue that Jonathan Neil is "inapposite" and that these "four factors may only be dicta." Opp. at 9–10. Contrary to plaintiff's argument, however, other courts have looked to the considerations the California Supreme Court identified in Jonathan Neil as guidance in determining whether to extend the tort claim. See, e.g., Tillbury, 137 Cal. App. 4th at 478 ("here, most of the factors Jonathan Neil relies upon persuade us that Tillbury has not stated a claim."); accord Elmer v. Infinity Ins. Co., No. 2:09-cv-02848-MCE, 2010 WL 2650576, at *3 (E.D. Cal. July 1, 2010) ("The Jonathan Neil court . . . *enumerated three factors* that weighed against permitting tort damages for the alleged breach on the part of the defendant insurer.") (emphasis added).

Case 2:19-cv-06478-CAS-GJS   Document 47   Filed 06/22/20   Page 10 of 13   Page ID #:855

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                      'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the marketplace and invest their money elsewhere.") (emphasis in original) (internal citation and quotation marks omitted); accord Draeger v. Transamerica Life Ins. Co., No. 2:19-cv-10478-CAS-GJS, 2020 WL 2542060, at *4 (C.D. Cal. May 18, 2020) (declining to extend tort remedy to individual investors who purchased policy on secondary market because investors "fail to establish, in light of the California Supreme Court's directive 'to proceed with caution," why *further* extending the tort remedy to individual investors is necessary to deter insurer misconduct.") (emphasis in original). And, while plaintiffs in this case further aver that they cannot "simply replace their policies with new policies on the same lives issued by different insurers at the same cost," Opp. at 16, the Court has concluded that the lack of fungibility of Transamerica's policies does not, itself, require extending the tort claim to individual and institutional investors that have purchased Transamerica's policies on the secondary market. See, e.g., EFG Bank, 2020 WL 1849493, at *6 (rejecting institutional investors' argument that extending tort claim was necessary to deter insurer misconduct since, according to investors, "investors cannot replace one life insurance policy with another policy in the secondary market because the universe of policies is limited, and one cannot simply find comparable substitutes with other insurance companies."); accord Draeger, 2020 WL 2542060, at *3–4.

### b.    Denial of Insurance Benefit

In Jonathan Neil, the California Supreme Court reasoned that public policy did not require extending the tort claim to an insured challenging an insurer's retroactive billing practices because "the billing dispute does not, by itself, deny the insured the benefits of the insurance policy—the security against losses and third party liability." 33 Cal. 4th at 990. Plaintiffs therefore argue that unlike the insured in Jonathan Neil, "[p]laintiffs have been denied an insurance benefit[.]" Opp. at 17. As discussed above, the Court has already concluded that plaintiffs' allegations regarding plaintiffs' Accumulation Values, interest accrued on the Accumulation Values, Transamerica's allegedly shortening the "period of coverage" of plaintiffs' policies, and Transamerica's purported efforts to induce policy lapses or surrenders do not, themselves, implicate an "insurance" benefit. See EFG Bank, 2020 WL 1849493, at *8 (rejecting institutional investors' argument that "denial of benefit" factor favored extending tort claim because "plaintiffs do not allege that benefits under the policies, such as the death benefit, have come due but that Transamerica has refused to pay them" but "[i]nstead . . . argue that by improperly raising its MDRs, Transamerica is trying to *frustrate* plaintiffs' right to the benefits of their Policies.") (emphasis in original) (internal alterations omitted); cf. Opp. at 16 ("Plaintiffs allege that [Transamerica] is trying to frustrate [p]laintiffs' right to the benefits of their Policies.").

Case 2:19-cv-06478-CAS-GJS   Document 47   Filed 06/22/20   Page 11 of 13   Page ID #:856

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                 'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### c.   Need to Prosecute Insurer

In Jonathan Neil, the California Supreme Court noted that "the dispute does not require the insured to prosecute the insurer in order to enforce its rights, as in the case of bad faith claims and settlement practices." 33 Cal. 4th at 939. That is because the practice that the insured challenged was the retroactive overbilling of premiums, and the insurer was required to sue the insured in order to collect the retroactive overcharges. Put differently, because the insurer could not immediately collect the challenged payments from its insureds, the insureds did not need to resort to litigation in order to preserve their rights and maintain the status quo.

Here, plaintiffs argue that "unlike in Jonathan Neil, the onus is on the insured either to sue or lose all coverage and all premiums already paid." Opp. at 21. According to plaintiffs, then, "[b]ecause [p]laintiffs had to sue [Transamerica] to enforce their rights, the third Jonathan Neil factor weighs in favor of granting the tortious breach claim as well." Id. In other cases, the Court has recognized that this factor favors extending the tort claim. See, e.g., EFG Bank, 2020 WL 1849493, at *8 ("The Court agrees that 'the onus is on the insured either to sue or lose all coverage.'"). "However, no one of the Jonathan Neil factors is dispositive, and the fact that plaintiffs may have to pursue affirmative litigation against Transamerica to challenge Transamerica's MDR increases does not, itself, require extending the tort claim here." Draeger, 2020 WL 2542060, at *6.

### d.   Lack of Adequate Alternative Remedies

Plaintiffs argue that "[t]he fourth Jonathan Neil factor, the availability of alternative administrative, contractual or tort remedies, also weighs in favor of allowing [p]laintiffs to sue for tortious breach." Opp. at 21. According to plaintiffs, "[w]ithout a claim for tortious breach, [p]laintiffs are left with only contractual claims a claim for conversion. Neither of these claims permits successful parties to recover attorneys' fees" and "are therefore inadequate alternatives to the proposed tortious breach claim[.]" Opp. at 21.

In Jonathan Neil, the California Supreme Court explained that the extending the tort remedy was unnecessary because, with respect to the insurer's policy of retroactively billing premiums, the insureds "had available various administrative, contractual, and tort remedies." 33 Cal 4th at 941. The Court has recognized, in other cases where investors that purchased Transamerica's policies on the secondary market have challenged Transamerica's MDR increases, that investors have viable remedies other than a claim for breach of the implied covenant sounding in tort." See Brighton Trustees, 2019 WL 5784925, at *6 ("the Court has already determined that plaintiffs have stated claims for

Case 2:19-cv-06478-CAS-GJS   Document 47   Filed 06/22/20   Page 12 of 13   Page ID #:857

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

breach of contract and breach of the implied covenant sounding in contract—therefore, this is not a case where plaintiffs have no other 'available various administrative, contractual, and tort remedies.'"); EFG Bank, 2020 WL 1849493, at *9 (declining to extend tort claim to institutional investors where investors had stated claims for breach of contract and conversion); accord Draeger, 2020 WL 2542060 (declining to extend tort claim to individual investors where investors had stated claims for breach of contract, fraud, and violation of California's unfair competition law). Moreover, plaintiffs assert a claim for conversion and, at this juncture, Transamerica does not seek dismissal of plaintiffs' conversion claim. That plaintiffs prefer the tort remedies, such as Brandt fees[4], "which may accompany a claim for breach of the implied covenant to the remedies attendant to their other claims does not, without more, require the Court to find that plaintiffs have a cognizable tort claim where the relevant Jonathan Neil factors compel a different result." Draeger, 2020 WL 2542060, at *6.

### 3. Miscellaneous Arguments

Plaintiffs make additional, miscellaneous arguments in opposition to Transamerica's motion to dismiss. Indeed, plaintiffs assert that: (1) denying plaintiffs the tort claim would harm individual insureds and incentivize insurers to breach their policies; (2) the Accumulation Value constitutes an "insurance benefit," the denial of which gives rise to a claim sounding in tort; and (3) the Court's distinction between institutional investors, such as plaintiffs, and the class in Thompson creates "unworkable pleading standards." Opp. at 22–25. The Court previously rejected these arguments in EFG Bank, 2020 WL 1849493, at *9–10, and plaintiffs do not provide the Court with a compelling basis to depart from its

---

[4] In Brandt v. Superior Court, the California Supreme Court determined that "[w]hen an insurer tortuously withholds benefits, . . . attorney's fees, reasonably incurred to compel payment of the benefits, [are] recoverable as an element of the damages resulting from such tortious conduct[.]" 37 Cal. 3d 813, 815 (1985). Plaintiffs argue that Brandt fees "are available to [p]laintiffs under their proposed Tortious Breach Claim[.]" Opp. at 21. However, as a preliminary matter, "questions about the appropriateness of specific remedies are premature at this stage of litigation." James ex rel. James Ambrose Johnson. Jr. 1999 Tr. v. UMG Recordings, No. 11-cv-01613-SI, 2011 WL 5192476, at *5 n.3 (N.D. Cal. Nov. 1, 2011). Moreover, because plaintiffs fail to state a claim for breach of the implied covenant sounding in tort, the Court need not decide whether plaintiffs would be entitled to Brandt fees assuming *arguendo* that plaintiffs' tort claim were viable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL** 'O'

| Case No. | 2:19-cv-06478-CAS-GJSx | Date | June 22, 2020 |
|---|---|---|---|
| Title | WELLS FARGO BANK, NATIONAL ASSOCIATION ET AL. v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

earlier determination that these arguments fail to establish that plaintiffs have adequately stated a claim for breach of the implied covenant sounding in tort.[5]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Transamerica's partial motion to dismiss. Specifically, with respect to the 74 policies that list "interest" as an enumerated cost factor, the Court **DISMISSES** plaintiffs' breach of contract claim, as alleged in ¶ 103(b) of the SAC, **with prejudice**. The Court also **DISMISSES** plaintiffs' claim for tortious breach of the implied covenant **with prejudice**.

IT IS SO ORDERED.

|  | 00 : 32 |
|---|---|
| Initials of Preparer | CMJ |

---

[5] During the hearing, plaintiffs' counsel argued that had plaintiffs not opted out of Feller v. Transamerica Life Ins. Co., No. 2:16-cv-01378-CAS-AJW, (C.D. Cal.), they would have been afforded the same treatment as the class plaintiffs in Feller, wherein the Court certified classes pursuing claims for, *inter alia*, tortious breach of the implied covenant. In response, Transamerica's counsel noted that had Feller proceeded to trial, Transamerica would have retained—against any class members whom purchased Transamerica's policies on the secondary market—individual defenses that purchasers on the secondary market are not entitled to the tort claim. Accordingly, the Court does not find plaintiffs' reliance on Feller availing.